IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                          No. 16-20084-SHM-dkv

JOSHUA TOWNSEL,

    Defendant.

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS

_____

On April 27, 2016, the grand jury returned a one-count indictment charging the defendant, Joshua Townsel ("Townsel"), with possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). (Indictment, ECF No. 1.) Now before the court is Townsel's July 20, 2016 motion to suppress evidence obtained by Memphis Police Department ("MPD") officers following a traffic stop of Townsel on January 7, 2016. (Def.'s Mot. to Suppress, ECF No. 21.) The government filed a response on August 3, 2016. (ECF No. 26.) The motion was referred to the United States Magistrate Judge for a report and recommendation. (ECF No. 22.)

Pursuant to the reference, the court held an evidentiary hearing on August 29, 2016. At the hearing, the government called two witnesses, Memphis Police Department ("MPD") Officers

Eric Jones ("Officer Jones") and Tony Brown ("Officer Brown"), and did not introduce any exhibits into evidence. Townsel called one witness, Federal Public Defender's Office Investigator Michael Pryor ("Pryor"), and introduced eleven exhibits into evidence: (1) a Google map of the area surrounding the intersection of Alton Avenue and Alice Avenue, (Ex. 1); (2) a photograph of the northbound view of South Lauderdale St. prior to the intersection with Longview Drive, (Ex. 2); (3) a photograph of the intersection of South Lauderdale Street and Longview Drive, (Ex. 3); (4) a photograph of Longview Drive before the intersection of Alton Avenue, (Ex. 4); (5) a second photograph of Longview Drive taken further east closer to the intersection of Alton Avenue, (Ex. 5); (6) a photograph of the intersection of Longview Drive and Alton Avenue, (Ex. 6); (7) a photograph of the same intersection but looking westward toward South Lauderdale Street, (Ex. 7); (8) an internet website showing the moon phases for the month of January 2016, (Ex. 8); (9) the State of Tennessee Affidavit of Complaint sworn to by Officer Brown charging Townsel with Theft of Property over $500 and Convicted Felon in Possession of Handgun, (Ex. 9); (10) the MPD Record of Arrest of Townsel ("Arrest Ticket"), (Ex. 10); and (11) a video recorded by Pryor while driving the same route driven by the MPD officers in the early hours of January 7, 2016, (Ex. 11).

After careful consideration of the statements of counsel, the testimony of the witnesses, the exhibits introduced at the hearing, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be granted.

## I.   PROPOSED FINDINGS OF FACT

On the early hours of January 7, 2016, Officers Jones and Brown performed a traffic stop of Townsel's vehicle based on a purported seatbelt law violation, determined that Townsel was driving with a suspended license, arrested Townsel, and searched his vehicle.   The Affidavit of Complaint, for which Officer Brown signed as the affiant, states:

> On 01/07/2015, at approximately 0148 hours, officers were on routine patrol in the area of Alice/Alston when they observed a male black, who was later identified as Defendant Joshua Townsel, driving a black Chevrolet Cavalier and not wearing a seatbelt. Townsel gave Officers a State Issued ID.  Officers ran Townsel's ID number through station B and it came back revoked on 9/28/2015 for Failure to pay fines and costs.  Officers placed Defendant Townsel in custody. Upon searching the vehicle incident to arrest, Officers located a 10mm Glock under the driver's seat. Officers ran the weapon's serial number through NCIC and the weapon came back stolen . . . .  Officers transported Defendant Townsel to the Felony Response Bureau. . . .

(Aff. of Compl., Ex. 9.)  The MPD Arrest Ticket states:

> On 01/07/2016 at 0004 hours, Officer E. Jones [] responded to a Theft from Motor Vehicle at Alice/Alton.  Officers initiated a traffic stop at Alice and Alton on a 2005 Chevrolet Cavalier silver in color for a seat belt violation.  Suspect Joshua

3

> Townsel was the driver and was found to have a revoked
> drivers license per NCIC and Station B.  The suspect
> was also unable to produce valid proof of insurance
> for the vehicle. . . .
> Also in the vehicle was front seat passenger, juvenile
> suspect Brian Haywood.  Officers searched the vehicle
> incident to tow and found a Glock 29 handgun with 9
> live rounds in the magazine [] under the front, driver
> side seat.  The weapon was checked through Station B
> and was found to be stolen. . . .

(Arrest Ticket, Ex. 10.)

At the time of Townsel's arrest, Officer Jones, the government's first witness, had been employed with MPD for four and a half years performing active patrol duties.  On January 6, 2016, Officer Jones was working a 5 p.m. to 1 a.m. shift along with Officer Brown and patrolling the area around Alton Avenue and Alice Avenue.  Each officer was driving a separate marked MPD vehicle and wearing an MPD uniform.  According to Officer Jones's testimony, both he and Officer Brown were driving southbound on South Lauderdale around midnight with Officer Jones in the lead when they passed Townsel driving a 2005 Chevrolet Cavalier in the opposite direction, traveling northbound on South Lauderdale, and upon passing Townsel, Officer Jones observed that Townsel was not wearing his seatbelt.  Officer Jones testified that he made a U-turn on South Lauderdale and proceeded to follow Townsel who immediately made a right turn on Longview Drive.  Officer Jones testified that he was approximately five to ten feet behind Townsel's

vehicle on Longview Drive when he again observed through Townsel's rear windshield that he was not wearing a seatbelt. Officer Jones stated that he was able observe the seatbelt violation because the area was well lit due to ambient street light, natural light because the moon was out, and his headlights. On cross-examination, Officer Jones stated that he did not recall where the street lights were located or how many there were.

Officer Jones testified that he then activated his blue lights and initiated a traffic stop of Townsel on Longview Drive but that Townsel did not stop immediately and instead continued to drive on Longview Drive and stopped at the intersection of Alton Avenue and Alice Avenue.[1] After Townsel arrived at a stop, Officer Jones approached the driver's side of Townsel's vehicle while Officer Brown approached the passenger side. Officer Jones testified that upon approaching Townsel's vehicle he again observed that Townsel was not wearing his seatbelt and also smelled a faint odor of marijuana coming from Townsel's car. Officer Jones asked Townsel for a driver's license which Townsel did not produce. Then Officer Jones asked Townsel for his name and Townsel gave him the incorrect name. Officer Jones testified that after he removed Townsel from his car, Townsel

---

[1]After the intersection of Alton Avenue, Longview Drive turns into Alice Avenue. (*See* Ex. 1.)

provided the correct identifying information to the officers. The officers ran the information which revealed that Townsel's driver's license had been revoked. Townsel was arrested, placed in handcuffs, and put in the backseat of Officer Jones's vehicle.

After Townsel was placed in custody in the rear of Officer Jones's police car, Officer Jones approached the passenger in Townsel's vehicle, later identified as Brian Haywood ("Haywood"), a juvenile. Officer Jones testified that Haywood was nervous, spoke softly, and could not produce his driver's license or any other form of identification. Upon learning that Haywood was a juvenile, the officers called his mother and asked her to come to the scene. According to Officer Jones, Haywood told the officers that there "may be" something under the driver's seat of Townsel's vehicle. The officers removed Haywood from the vehicle and had him remain on the sidewalk with Officer Brown while Officer Jones searched the vehicle. Officer Jones found a Glock handgun under the driver's seat, and, after running its serial number, learned that the weapon had been reported stolen. At that time, pursuant to procedure, Officer Jones called for his sergeant to make the scene, began writing his report, contacted a tow truck to tow Townsel's vehicle, and called Felony Response. Officer Jones transported Townsel to

Felony Response where he was charged with theft over $500 and with possession of firearm.[2]

On cross-examination, Townsel requested that the court take judicial notice of the moon cycle for the month of January 2016, (Ex. 8). Townsel also introduced into evidence a video of the area, filmed by investigator Pryor on Wednesday, August 24, 2016. (DVD, Ex. 11.) When asked about the accuracy of the video, Officer Jones stated that he could not accurately say whether the street lamps in the video were the same as those present on January 7, 2016 and that he was not aware of whether any street lights had been torn down since January 7, 2016. Further, Officer Jones reiterated that he was using his simple, regular headlights on his vehicle, a four-door sedan, which lights, unlike high beams or spot lights, point toward the ground. Also on cross-examination, Officer Jones conceded that South Lauderdale is a four-lane road with a speed limit of at least 35 miles per hour and that he was driving within the speed limit but did not know how fast Townsel was driving. He further acknowledged that in the Affidavit of Complaint, his partner Officer Brown indicated that the search of Townsel's vehicle was performed incident to arrest. Nevertheless, at the hearing, Officer Jones maintained that the search of Townsel's vehicle

---

[2]Officer Brown transported Haywood and his mother to Felony Response. Haywood was not charged with anything.

was incident to tow. When asked when he made the decision to tow Townsel's vehicle, however, Officer Jones stated on multiple occasions, both on direct and cross-examination, that he decided to tow the vehicle _after_ the weapon was found. In addition on cross-examination, Officer Jones admitted that the Arrest Ticket, which he authored, did not contain any information about the faint odor of marijuana. On re-direct, Officer Jones explained that although his training teaches that the arrest ticket should be accurate, he does not generally put every detail in the arrest ticket.

The government's second witness, Officer Brown, has worked for the MPD for five years. On the evening of January 6, 2016, Officer Brown was also working the 5 p.m. to 1 a.m. shift along with Officer Jones. Officer Brown was traveling in his vehicle behind Officer Jones's vehicle on South Lauderdale and did not see Townsel's car. Officer Brown testified that after passing Townsel, Officer Jones made a U-turn, turned on his blue lights, and followed Townsel's vehicle. At that point, Officer Brown did not know the purpose of the stop but followed Officer Jones. Officer Brown testified that Townsel initially kept driving but then stopped on Alton Avenue. As the officers were walking up to Townsel's car, Officer Brown asked Jones why he stopped the vehicle and Officer Jones responded for a seatbelt violation. Officer Brown testified that Townsel was nervous and hesitant at

first and did not provide his driver's license or other identification.

Officer Brown testified that the Affidavit of Complaint sworn to by him mistakenly states that Townsel produced a state-issued ID but, in fact, Townsel did not produce any identification. Officer Brown testified that although he signed the Affidavit of Complaint, he did not read it. According to Officer Brown, after Townsel did not produce any identification, he was detained in police car and when the officers learned Townsel's name and determined that his driver's license had been revoked. Townsel was placed under arrest for driving with a revoked license.

Officer Brown testified that when he initially approached the passenger side of Townsel's car where Haywood was seated, he smelled the odor of marijuana. According to Officer Brown, Haywood was nervous and when asked by Officer Jones whether there was anything in the car, Haywood responded that Townsel put something behind his seat. Officer Brown stated that the officers asked Haywood to step out of the vehicle, and, because the vehicle would be towed, Officer Jones performed an inventory of the vehicle for "guns, drugs, weapons, or high value items." Officer Jones discovered a black handgun under driver's seat which the officers determined had been reported stolen.

On re-cross examination, Officer Brown stated that under MPD policy, the officers had to tow Townsel's vehicle because he was under arrest. Officer Brown acknowledged that the MPD towing policy allows the officers to leave a vehicle which is legally parked on public property. However, on re-re-direct, Officer Brown claimed for the first time that Townsel's car was illegally parked in the street because he believed it was more than 12 inches from the curb.

Townsel's only witness Pryor has worked as an investigator for the Federal Public Defenders Office for two years. Prior to that, Pryor served as a law enforcement officer for twenty-two years. Pryor testified that on Wednesday, August 24, 2016, around midnight, he drove to the area of Alton Avenue and Alice Avenue and recorded a video of the driving route with a cell phone. The video depicts Pryor driving northbound on South Lauderdale, making a right turn onto Longview Drive, making a left turn onto Alton Avenue, and approaching South Lauderdale again. (Ex. 11.) Pryor testified that the purpose of the video was to show the lighting in the area and indicate whether a driver can see inside another approaching vehicles. Pryor testified that he was driving a 2014 GMC Sierra truck, which is a higher vehicle than a regular sedan. Further, Pryor stated that he had his regular, low beam, lights on.

## II. PROPOSED CONCLUSIONS OF LAW

In the instant motion to suppress, Townsel first challenges the validity of his traffic stop. (Def.'s Mot. to Suppress 3-4, ECF No. 21.) Townsel further argues that even if the traffic stop was legitimate, the search of his vehicle was unlawful. (*Id.* at 4-5.) In response, the government submits that the police officers had probable cause to conduct a traffic stop and that the search of Townsel's vehicle was lawful under the inventory exception *and* the automobile exception to the Fourth Amendment. (Gov't's Resp. 2-5, ECF No. 26.)

A. <u>Validity of the Traffic Stop</u>

A traffic stop is a "seizure" subject to the reasonableness requirement of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *United States v. Guajardo*, 388 F. App'x 483, 487 (6th Cir. 2010)("The Fourth Amendment's prohibition against unreasonable searches and seizures by the government 'extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest.'" (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002))). In the Sixth Circuit, the applicable standard to justify a police officer's stop of a vehicle based on a traffic violation depends on whether the violation is an ongoing or completed offense. *See United States v. Simpson*, 520 F.3d 531, 540-41 (6th Cir. 2008). The Sixth Circuit held in *Simpson* that based on its prior decision in *United States v. Freeman*, 209 F.3d 464 (6th

Cir. 2000), officers must have probable cause to initiate a traffic stop for a completed misdemeanor, such as veering into an emergency lane, but only reasonable suspicion for a traffic stop for an ongoing misdemeanor, such as driving on a suspended license. *Id.* at 541; *see also United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). Because the alleged violation in the present case was "ongoing," *i.e.* Townsel was driving without wearing a seatbelt, the court must apply the reasonable suspicion standard.

A court is given wide latitude in making its credibility determinations. *United States v. Haynes,* 301 F.3d 669, 679 (6th Cir. 2002)(citing *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 573-75 (1098)). "In assessing credibility, a court considers numerous factors, ultimately relying on the common sense tests of reason and logic." *United States v. Caldwell*, No. 1:13-CR-128, 2015 WL 179583, at *9 (E.D. Tenn. Jan. 14, 2015). However, the court does not have unlimited discretion, and a court may not credit a witness's testimony if documents or other objective evidence contradict the witness's story; or the story itself is "'so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" *Haynes*, 301 F.3d at 679-80 (quoting *Anderson*, 470 U.S. at 575)). In *United States v. Hill*, 195 F.3d 258 (6th Cir. 1999), the Sixth Circuit expressed its concern over the potential abuse by officers in

stopping vehicles for any alleged traffic violation.  The court
stated:

> We share in the concern that police officers are using
> the state of the law in this Circuit as carte blanche
> permission to stop and search "target" or "profile"
> vehicles for drugs.  Of course, the Supreme Court in
> *Whren* confirmed that a police officer is legally
> allowed to stop a vehicle for a traffic violation when
> there is probable cause for the traffic stop, without
> regard for the officer's subjective motivation.
> However, we agree that it is the responsibility of the
> courts to make sure that police officers act
> appropriately and not abuse the power legally afforded
> to them by, among other things, carefully scrutinizing
> a police officer's testimony as to the purpose of the
> initial traffic stop.

*Id.* at 267.

Here, Officer Jones testified that he observed Townsel
driving without wearing a seatbelt, in violation of Tenn. Code
Ann. § 55-9-603(a)(1), when he passed Townsel's vehicle on South
Lauderdale around midnight as he was driving in the opposite
direction at a speed of at least 35 miles per hour.  Officer
Jones further testified that he observed the seatbelt violation
for a second time through Townsel's rear windshield as Officer
Jones was driving behind Townsel on Longview Drive.  Officer
Jones's testimony on this particular point, however, is
contradicted by Officer Brown's testimony as well as evidence
submitted by Townsel at the suppression hearing.  Furthermore,
as discussed herein, there are other inconsistencies between
Officer Jones's testimony, Officer Brown's testimony, the

Affidavit of Complaint, and the Arrest Ticket that undermine the credibility of the testimony of the MPD officers at the hearing.

The court cannot credit Officer Jones's testimony with respect to his observations of Townsel driving without wearing a seatbelt on two different occasions prior to initiating the traffic stop because it is contradicted in part by Officer Brown's testimony. Officer Jones testified that he observed the seatbelt violation twice before he activated his blue lights and initiated the traffic stop, once while driving on South Lauderdale in the opposite direction and a second time through Townsel's rear windshield while following Townsel on Longview. Officer Brown testified, however, that Officer Jones initiated a traffic stop of Townsel by turning on his blue lights while he was making a U-turn on South Lauderdale before Officer Jones would have had the opportunity to observe a seatbelt violation for the second time while traveling behind Townsel. Officer Brown's testimony, therefore, does not support Officer Jones's testimony. The contradictory versions of the incident are troubling and make Officer Jones's testimony regarding the circumstances leading to the stop of Townsel unreliable.

Officer Jones's testimony is further undermined by other evidence. Officer Jones testified that he was able to observe the seatbelt violation because: (1) there was natural light coming from the moon; (2) there was ambient light coming from

street lights; and (3) his headlights on his patrol vehicle. As stressed by Townsel, however, on January 7, 2016, the moon was barely visible at 6%.[3] Further, the video taken by Pryor as he was driving a GMC truck shortly after midnight along South Lauderdale, Longview and Alton, demonstrate that neither the ambient lights in the area nor the regular, low beam headlights on his truck provided sufficient lighting to allow the driver to observe inside another vehicle traveling in the opposite direction. Officer Jones's assertion is further belied by his admission that he was driving at least 35 miles per hour. It defies logic that a driver at night traveling at 35 miles per hour would have sufficient opportunity to observe whether the driver of an oncoming vehicle was wearing a seatbelt particularly when the car was operating with its low beams which shine downward and not into the interior of the approaching car.

---

[3] *See* The Old Farmer's Almanac, *available at* http://www.almanac.com/astronomy/moon/calendar/TN/Memphis/2016-01. Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The court may take judicial notice if requested to do so or *sua sponte*. *United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964). The facts contemplated by Fed. R. Evid. 201(b)(2) "are so-called 'almanac' facts such as that August 7, 2013, was a Wednesday or Abraham Lincoln was the sixteenth President of the United States." *Hazel v. Warden, Chillicothe Corr. Inst.*, No. 3:13-CV-332, 2014 WL 3795570, at *3 (S.D. Ohio July 31, 2014). The moon phase on January 7, 2016 is a fact that can be accurately determined from an almanac, such as the Old Farmer's Almanac, and therefore, the court can take judicial notice of it.

Nor was there any evidence presented by the government as to the lanes in which the vehicles were traveling when they passed each other. South Lauderdale is a four-lane major thoroughfare. The officers testified that Townsel turned right onto Longview Drive immediately after he passed the officers, thus implying he was traveling in the right lane rather than the center lane which would make it even more difficult for Officer Jones to observe whether or not Townsel was wearing a seatbelt when he passed going in the opposite direction. In addition, Officer Jones's testimony as to why he was in this particular vicinity that night differs from the Arrest Ticket. The Arrest Ticket states that Officer Jones was in the vicinity of Alice/Alton because he was responding to a call concerning a theft from a motor vehicle in that area but at the hearing, Officer Jones testified that he and Officer Brown were in the vicinity on routine patrol and failed to mention the theft from auto call.

The Sixth Circuit has cautioned that the court "must be particularly careful in scrutinizing a police officer's purpose for initially stopping a 'target' vehicle." *Hill*, 195 F.3d at 267. Given the evidence introduced by Townsel, along with the fact that Officer Brown gave a different version of the traffic stop, the court finds that Officer Jones's "story [] is so internally inconsistent [and] implausible on its face that a

reasonable factfinder would not credit it." *Haynes*, 301 F.3d at
679-80 (quoting *Anderson*, 470 U.S. at 575)).   Accordingly, the
government has not proven by a preponderance of evidence that
Officer Jones had developed a reasonable articulable suspicion
to stop Townsel for committing a traffic law violation.

B.   Legality of the Search of Townsel's Vehicle

The second issue here is whether the warrantless search of
Townsel's vehicle was lawful pursuant to an exception to the
Fourth Amendment's warrant requirement.   The government
maintains that the search of Townsel's vehicle was proper under
either the inventory or the automobile exception to the Fourth
Amendment.

The Fourth Amendment provides:

> The right of the people to be secure in their persons,
> houses, papers, and effects, against unreasonable
> searches and seizures, shall not be violated, and no
> warrants shall issue, but upon probable cause,
> supported by oath or affirmation, and particularly
> describing the place to be searched, and the persons
> or things to be seized.

U.S. Const. amend. IV.  The Fourth Amendment prohibits
warrantless searches and seizures, and any search conducted
without a warrant is considered "per se unreasonable." *United
States v. Roarke*, 36 F.3d 14, 17 (6th Cir. 1994)(quoting *Katz v.
United States*, 389 U.S. 347, 357 (1967)).   The Fourth
Amendment's requirement of probable cause and a warrant is,
however, subject "to a few specifically established and well-

delineated exceptions." *Katz*, 389 U.S. at 357. The burden is on the government to prove, by a preponderance of the evidence, that the circumstances justified a warrantless search. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974); *United States v. Bradley*, 163 F. App'x 353, 357 (6th Cir. 2005)(unpublished). Assuming that the initial traffic stop of Townsel was constitutional, the court finds that the search of Townsel's vehicle was not lawful under either the inventory or the automobile exception to the Fourth Amendment.

    1.   *Inventory Search*

Inventory searches constitute an exception to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987). This exception permits officers to search vehicles as well as the contents of closed containers within those vehicles, for the purposes of creating an inventory of the contents, so long as the officers conduct such a search pursuant to established procedures and in good faith. *Id.* at 371-72, 374; *see also South Dakota v. Opperman*, 428 U.S. 364, 369 (1970)(stating that the police must follow established standardized procedures when performing the inventory search). The search must be conducted "in good faith, not as a pretext for criminal investigation." *United States v. Tackett*, 486 F.3d 230, 232 (6th Cir. 2007). The true purpose of the search must be to inventory the owner's property while in police custody. *Id; see also Jackson*, 682

F.3d at 455 ("In order to be deemed valid, an inventory search may not be undertaken for the purposes of investigation . . . [and] it must be sufficiently tailored to only produce an inventory." (quotations and internal quotation marks omitted)).

The justification for inventory searches is based on the community caretaking function, in which vehicles that "jeopardize both the public safety and the efficient movement of vehicular traffic" are taken into police custody. *Opperman*, 428 U.S. at 368-69. Inventory searches also provide protection for the owner's property while in the custody of the police, protection against claims of lost or stolen property, and protection of police from danger. *E.g.*, *Bertine*, 479 U.S. at 372; *Opperman*, 428 U.S. at 369; *Tackett*, 486 F.3d at 232.

In support of the its position that the search of Townsel's vehicle was a valid inventory search, the government offered the testimony of Officers Jones and Brown. Officer Jones specifically maintained at the hearing that the search of Townsel's vehicle was "incident to tow." The Arrest Ticket similarly states that the officers searched Townsel's vehicle "incident to tow," (Ex. 10), but the Affidavit of Complaint states Townsel's vehicle was searched "incident to arrest," (Ex. 9). When asked when the decision to tow Townsel's vehicle was made, Officer Jones stated on multiple times that the decision to tow the vehicle was made <u>after</u> the weapon was found. In

addition, Officer Jones also testified he searched Townsel's vehicle because he smelled marijuana and the passenger said Townsel may have put something under the driver's seat. Because Townsel's vehicle was searched before the decision to tow the vehicle was made, the search cannot be justified as an inventory search. Therefore, Officer Jones's testimony does not establish that the officers conducted a proper inventory search.

Officer Brown also maintained at the hearing that the search of Townsel's vehicle was an inventory search. Officer Brown testified on direct-examination that, pursuant to MPD tow policy, because Townsel was placed under arrest and neither Townsel nor his passenger had a driver's license, the officers decided to tow the vehicle and performed an inventory search. After being confronted on re-cross examination as to whether Townsel's vehicle could have been left parked on the public street consistent with the MPD Towing Policy and no inventory performed, Officer Brown for the first time on re-re-direct claimed that Townsel's vehicle was illegally parked too far from the curb. In the Affidavit of Complaint, however, Officer Brown did not state any facts pertaining to an inventory search but instead stated under oath in the Affidavit of Complaint that the search was "incident to arrest." (*See* Ex. 9.)[4] Nor did Officer

_____

[4]There are other inconsistencies between the officers' testimonies and Townsel's Affidavit of Complaint. For instance,

Brown mention in the Affidavit of Complaint that the officers decided to tow Townsel's vehicle because it was illegally parked.

Furthermore, there was no evidence submitted by the government that the inventory was conducted pursuant to "standard police procedures" and "sufficiently tailored to only produce an inventory." *Jackson*, 682 F.3d at 455 (citations omitted). Officer Brown testified that the officers started doing inventory for guns, drugs, and high value items. This testimony undermines the validity of the inventory search because, as stated above, "'[i]n order to be deemed valid, an inventory search may not be undertaken for purposes of investigation.'" *Id.* (quoting *United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007)).

The court simply cannot reconcile the testimony of Officer Jones and Officer Brown as to when the decision to tow the vehicle was made. Given the inconsistency between the officers' testimonies, as well as the discrepancies between Officer Brown's testimony at the hearing and his statements in the Affidavit of Complaint, the court finds that the government has failed to carry its burden in proving that the search of

---

in the Affidavit of Complaint, Officer Brown states that Townsel gave the officers a state-issued ID. (Ex. 9.) At the hearing, Officer Brown acquiesced that the statement in the Affidavit of Complaint was incorrect because in fact Townsel did not produce any identification.

Townsel's vehicle was a proper inventory search. Therefore, the court finds that the search of Townsel's vehicle cannot be justified as an inventory search.

2. *Automobile Exception*

Under the automobile exception, an officer may perform a warrantless search of a detained vehicle if the officer has probable cause to believe that the vehicle contains contraband or evidence of criminal activity. *United States v. Lyons*, 687 F.3d 754, 770 (6th Cir. 2012). Probable cause exists when there is a fair probability under the totality of the circumstances that contraband or evidence of a crime will be found in a particular place. *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). "[A]n officer's detection of the smell of marijuana in an automobile can by itself establish probable cause for a search." *United States v. Elkins,* 300 F.3d 638, 659 (6th Cir. 2002); *see also United States v. Johnson*, 707 F.3d 655, 658 (6th Cir. 2013); *United States v. Crumb*, 287 F. App'x 511, 514 (6th Cir. 2008); *United States v. Foster*, 376 F.3d 577, 583-84 (6th Cir. 2004); *United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir. 1993).

Here, both Officers Jones and Brown testified that they smelled a faint odor of marijuana emanating from Townsel's vehicle. Having found the officers' testimonies as to the circumstances regarding the traffic stop and the inventory

search unreliable, the court is also wary of their testimony regarding the odor of marijuana. Furthermore, the officers did not state either in the Affidavit of Complaint or the Arrest Ticket that they detected the odor of marijuana or that Haywood told them Townsel placed something under the driver's seat. In these documents, the officers justified the search as either an inventory search or a search incident to arrest, neither of which the court has determined was a legal search under the Fourth Amendment. In short, before the response to the motion to suppress was filed, there was no indication that the officers searched Townsel's vehicle because they detected the smell of marijuana. *See Martinez*, 356 F. Supp. 2d at 870 (stating that the agent's credibility was undermined because he initially asserted a different a reason for stopping the vehicle than that asserted at the suppression hearing). In fact, no marijuana was ever found in Townsel's vehicle to corroborate the officer's testimonies. Given the other inconsistencies in the officers' testimonies, the Affidavit of Complaint, and the Arrest Ticket, the court finds the officers' assertion that they smelled marijuana unreliable. The government has not met its burden, therefore, to prove that the search of Townsel's vehicle was a proper automobile search.

### III. RECOMMENDATION

For the reasons expressed above, it is recommended that Townsel's motion to suppress be granted.

Respectfully submitted this 8th day of September, 2016.


s/Diane K. Vescovo
DIANE K. VESCOVO
UNITED STATES MAGISTRATE JUDGE


NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.