# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:16-CR-20084 |
| **JOSHUA TOWNSEL,** | ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Joshua Townsel's Motion to Suppress Evidence, filed on July 20, 2016. (Mot. to Suppress Evidence and Incorporated Mem. in Supp., ECF No. 21 ("Mot. to Suppress").) The United States (the "Government") responded in opposition on August 3, 2016. (U.S. Resp. to Mot. to Suppress Evidence, ECF No. 26 ("Resp. to Mot. to Suppress").) On September 8, 2016, United States Magistrate Judge Diane K. Vescovo issued her Report and Recommendation on Defendant's Motion to Suppress (ECF No. 32 ("Report")), recommending that the Motion to Suppress be granted.

On September 22, 2016, the Government filed objections to the Report. (Gov't Objs. to the R. & R. of the Magistrate, ECF No. 43 ("Gov't Objs.").) Townsel filed a response to the Government's objections on October 20, 2016. (Def.'s Resp. to

Gov't Objs. to R. & R., ECF No. 47 ("Resp. to Gov't Objs.").) The Government filed a reply in support of its objections on November 4, 2016. (Gov't's Reply to the Def.'s Resp. to the Gov't's Objs. to the R. & R. of the Magistrate, ECF No. 51 ("Reply ISO Gov't Objs.").)

The Magistrate Judge's Report is ADOPTED, and the Motion to Suppress is GRANTED.

**I.   BACKGROUND**

On January 7, 2016, two Memphis Police Department ("MPD") officers, Eric Jones ("Jones") and Tony Brown ("Brown") conducted a traffic stop of Townsel. (See, e.g., August 29, 2016 Hr'g Tr. 9, 15 ("Hr'g Tr.").) The officers based the stop on a purported seatbelt-law violation. (See, e.g., id. at 11-15.) The stop culminated in Jones's finding a Glock 10mm pistol under the driver's seat of Townsel's vehicle. (See, e.g., id. at 26-28.)

On April 27, 2016, a federal grand jury returned a one-count indictment against Townsel. (Indictment, ECF No. 1.) Count 1 charged Townsel, a convicted felon, with possessing the Glock pistol on or about January 7, 2016, in violation of 18 U.S.C. § 922(g)(1). (Id.)

On July 20, 2016, Townsel filed the Motion to Suppress. Townsel argues that the Court should suppress all evidence of the firearm found during the traffic stop. (See generally Mot.

to Suppress.) On July 20, 2016, the Court referred the Motion to Suppress to Magistrate Judge Vescovo for a report and recommendation. (Order of Reference, ECF No. 22.) On August 3, 2016, the Government filed its Response to Motion to Suppress. (ECF No. 26.)

The Magistrate Judge held a hearing on the Motion to Suppress on August 29, 2016. (See generally August 29, 2016 Hr'g Tr. ("Hr'g Tr.").) At the hearing, the Government presented two witnesses: Jones and Brown. (See, e.g., id. at 8, 77.) Townsel presented one witness: Michael Pryor ("Pryor"), an investigator for the Office of the Federal Public Defender. (Id. at 104.) The Report summarizes the hearing testimony. (Report 4–8 (Jones's testimony); id. at 8–10 (Brown's testimony); id. at 10 (Pryor's testimony).)[1] The Magistrate Judge recommends that the Court grant the Motion to Suppress. (Report 24.)

## II. STANDARD OF REVIEW

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district-court duties to magistrate judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United

---

[1] Based on a de novo review of the hearing transcript and exhibits, the summary in the Report is accurate, and the Court adopts it.

States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003) (quoting Curtis, 237 F.3d at 602). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1).

The district court need not review, under a de novo or any other standard, those aspects of the report and recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150-52 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. Id.

Certain of the Government's objections to the Report address the Magistrate Judge's credibility determinations. When a magistrate judge's findings and recommendations rest on evaluations of witness credibility, the district court need not rehear the testimony to conduct a de novo determination of the issues. United States v. Johnson, No. 10-20176, 2011 WL 3844194 at *2 (W.D. Tenn. Aug. 30, 2011) (quoting United States v. Bermudez, Case No. 99-6097, 2000 WL 1871676, at *3 (6th Cir. Dec. 11, 2000)). "'When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district

4

court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses [she] sees and hears.'" Id. (quoting United States v. Robinson, No. 1:07-CR-01, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007)). "'Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment.'" Id. (quoting Robinson, 2007 WL 2138635, at *1).

### III. ANALYSIS

The Government objects to several findings of the Report. First, it "objects to the finding that . . . Jones did not have probable cause to conduct the traffic stop of Townsel's car for a seatbelt violation." (Gov't Objs. 2.) Second, it "objects to the finding that the officers did not conduct a lawful inventory of Townsel's car." (Id. at 6.) Third, the Government "objects to the finding that the officers did not have probable cause to search Townsel's car under the automobile exception." (Id. at 8.) The Government also argues that, "[e]ven if this Court finds that the automobile exception does not apply, since the inventory of Townsel's car was lawful, . . . the [MPD] officers would have inevitably discovered the Glock 10mm after Townsel's

car had been towed and inventoried." (Id. at 9 (citing United States v. Bah, 794 F.3d 617, 624-25 (6th Cir. 2015).)

**A. Reasonable Suspicion for Traffic Stop**

The Fourth Amendment to the Constitution prohibits unreasonable searches and seizures. A traffic stop is a "seizure" for Fourth Amendment purposes. See, e.g., Whren v. United States, 517 U.S. 806, 809-10 (1996) (citing cases); United States v. Dean, --- F. App'x ---, 2016 WL 5219879, at *2 (6th Cir. Sept. 22, 2016) (citing United States v. Jackson, 682 F.3d 448, 452 (6th Cir. 2012)).

In the Sixth Circuit, when police assert that a traffic violation justifies a traffic stop, the standard for assessing the stop depends on whether the claimed violation has been completed or is ongoing. When the asserted violation has been completed, the probable-cause standard applies. The officers must have probable cause to believe that the violation occurred. See, e.g., Dean, 2016 WL 5219879, at *2; United States v. Collazo, 818 F.3d 247, 253 (6th Cir. 2016) (quoting United States v. Blair, 524 F.3d 740, 748 (6th Cir. 2008)). When the police justify a traffic stop based on an ongoing offense, the reasonable-suspicion standard applies. The officers must have a reasonable suspicion that the violation is occurring. See, e.g., Dean, 2016 WL 5219879, at *2; Collazo, 818 F.3d at 253-54 (quoting Blair, 524 F.3d at 748). In this case, MPD officers

justified Townsel's traffic stop based on an ongoing violation: failure to wear a seatbelt, in violation of Tenn. Code Ann. § 55-9-603(a)(1).[2] (See, e.g., Resp. to Mot. to Suppress 3.) The reasonable-suspicion standard applies.

To justify a traffic stop under the reasonable-suspicion standard, "'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the stop].'" United States v. Alexander, 528 F. App'x 515, 518 (6th Cir. 2013) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)). "Courts judge those facts by an objective reasonableness standard; an 'inarticulate hunch' does not constitute a reasonable suspicion." Id. at 518–19 (citing Terry, 392 U.S. at 21–22). A court must consider the totality of the circumstances when determining whether an officer had a reasonable suspicion of criminal activity. United States v. Cortez, 449 U.S. 411, 417 (1981); United States v. Richardson, 385 F.3d 625, 630 (6th Cir.

---

[2] Under section 55-9-603(a)(1), "[n]o person shall operate a passenger motor vehicle on any highway . . . in this state unless the person and all passengers four (4) years of age or older are restrained by a safety belt at all times the vehicle is in forward motion." For relevant purposes, "highway" is defined as "the entire width between the boundary lines of every way when any part thereto is open to the use of the public for purposes of vehicular travel." Tenn. Code Ann. § 55-8-101(24). There is no dispute that the roads on which the officers observed Townsel were "highways" for purposes of section 55-9-603(a)(1).

7

2004). Courts use a commonsense approach to consider evidence offered in support of reasonable suspicion. Richardson, 385 F.3d at 630 (citing Cortez, 449 U.S. at 417–18).[3]

Because the police officers did not have a warrant before conducting the traffic stop, the Government has the burden of proving the traffic stop was valid. See, e.g., United States v. Torbert, No. 1:15-CR-114, 2016 WL 4920741, at *7 (S.D. Ohio Sept. 15, 2016) (quoting United States v. Haynes, 301 F.3d 669, 677 (6th Cir. 2002)); United States v. Davis, 565 F. Supp. 2d 841, 850 (N.D. Ohio 2008) (citing United States v. Herndon, 501 F.3d 683, 692 (6th Cir. 2007)). The Government must show by a preponderance of the evidence that the MPD officers had a reasonable suspicion that Townsel was committing a seatbelt violation. See, e.g., United States v. Torres-Ramos, 536 F.3d 542, 552 (6th Cir. 2008); United States v. Ruiz, 832 F. Supp. 2d 903, 914 (M.D. Tenn. 2011) (citing cases).

Much of the Government's objection to the Magistrate Judge's reasonable-suspicion finding reiterates the testimony of

---

[3] The Government suggests that the probable-cause standard applies. (See, e.g., Gov't Objs. 2 ("The Government objects to the finding that Officer Jones did not have **probable cause** to conduct the traffic stop of Townsel's car for a seatbelt violation.") (emphasis added).) Based on the officers' justification, that is not the correct standard. The Court will consider the Government's objection under the reasonable-suspicion standard.

Jones, who initiated the traffic stop.[4]  (See, e.g., Gov't Objs. 2-4.)  The gravamen of the argument is that Jones's suppression-hearing testimony was credible and that he had a reasonable suspicion that Townsel was committing a seatbelt violation. After reviewing the suppression-hearing testimony and exhibits, the Court has no independent reason to question the Magistrate Judge's credibility assessment.

First, the Government contends that, "[d]uring the motion to suppress hearing, Townsel did not dispute, call into question or offer any testimony that he was in fact, wearing a seatbelt" before the traffic stop.  (Gov't Objs. 2; see also Reply ISO Gov't Objs. 1.)  The burden of proof lies with the Government. Townsel need not establish that he was wearing a seatbelt before the traffic stop.  It is the Government's burden to establish that Jones had reasonable suspicion that Townsel was not wearing one.

Second, the Government argues it is "plausible" that Jones could have seen, and did see, Townsel's seatbelt violation. (Gov't Objs. 3.)  The proper standard is not plausibility.  The Government must do more than show it was plausible that Jones saw Townsel's alleged seatbelt violation.  The Government must

---

[4] The Government concedes that Brown did not observe a seatbelt violation justifying the stop.  (Hr'g Tr. 122-23.)

9

show, by a preponderance of the evidence, that Jones had a reasonable suspicion that Townsel was not wearing a seatbelt.[5] Plausibility is not enough.

Third, the Government argues that the Magistrate Judge "placed undue weight" on a video that Townsel introduced into evidence at the suppression hearing, and "erred in using the video to evaluate Officer Jones's credibility as to whether he was able to see the seatbelt violation." (Gov't Objs. 4, 6.) Pryor took the video at the request of Townsel's counsel. (Hr'g Tr. 105.) At around midnight on August 24, 2016, Pryor drove on the roads where the traffic stop had occurred. (Id. at 105-06.) The Government argues that the video was "irrelevant" and "unduly prejudicial," pointing to various alleged differences between conditions when Pryor made the video and conditions during the traffic stop and to the quality of the video. (Gov't Objs. 4-6.)

---

[5] The Government's concern with plausibility may refer to the Magistrate Judge's statement that a court need not credit a witness's testimony if the witness's account is "'so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it.'" (Report 12 (quoting Haynes, 301 F.3d at 679-80 (internal quotation marks omitted)).) In this context, the Government may invoke plausibility to suggest that the Government's witnesses' testimony was not "implausible on its face," and so the Magistrate Judge should have credited it. As noted above, however, the Court has no reason to question the Magistrate Judge's credibility determinations.

The Government's argument is not persuasive for several reasons. As Townsel points out, the Federal Rules of Evidence do not apply at hearings on motions to suppress. See, e.g., United States v. Stepp, 680 F.3d 651, 668 (6th Cir. 2012); United States v. Lopez-Urquiza, No. 1:10-CR-151, 2012 WL 2861727, at *3 (E.D. Tenn. July 11, 2012) (citing Stepp). Even if the Rules of Evidence did apply, differences between the conditions in the video and the conditions during the traffic stop, and any questions about the quality of the video, bear on the weight the factfinder should give the video, not its admissibility. See, e.g., United States v. Baldwin, 418 F.3d 575, 579–80 (6th Cir. 2005); United States v. Dunbar, No. 5:09-CR-00015-R, 2010 WL 5476757, at *3 (W.D. Ky. Dec. 30, 2010) (citing cases).

More importantly, the Magistrate Judge's determination that Jones's reasonable-suspicion testimony was not credible was based on more than the video. The Magistrate Judge noted (1) discrepancies between Jones's testimony and Brown's testimony about the events before and during the traffic stop; (2) Jones's claim about the level of moonlight during the traffic stop, contradicted by the *Farmer's Almanac* record of the

11

moon's phase that night;[6] (3) the speed at which Jones's car would have passed Townsel's when, according to Jones's testimony, he first noticed a seatbelt violation; (4) the lack of Government evidence about the lanes in which Jones and Townsel were travelling; and (5) differences between Jones's testimony and the arrest ticket as to why Jones was in the area at the time of the traffic stop. (Report 13-16.) Even if it had been inappropriate for the Magistrate Judge to consider Pryor's video, and it was not, there was ample additional evidence from which the Magistrate Judge could conclude that Jones was not credible.

The Government has not provided grounds for the Court to question the Magistrate Judge's credibility determinations. The Court's review of the suppression-hearing transcript and exhibits provides no such grounds. Because Jones made the

---

[6] The Government argues in its Objections that "Townsel did not provide any evidence regarding the brightness of the moon at six percent or whether it was cloudy at the time of the [traffic stop." (Gov't Objs. 3 n.1.) The Government repeats that argument in its reply in support of its Objections. (Reply ISO Gov't Objs. 5.) The argument is not well taken. The Magistrate Judge could assess the effect the moon's phase on the night of the traffic stop might have had on Jones's ability to observe any seatbelt violation. Whether it was cloudy that night is not the point. Cloudiness would not change the fact that the moon was in crescent phase, a fact that Jones conceded would have affected the amount of light at the time of the stop. (Hr'g Tr. 43.) Proof that it was cloudy would suggest more difficulty in observing a seatbelt violation, not less.

12

traffic stop, and Brown does not contend that he witnessed any seatbelt violation, the determination that Jones's testimony was not credible is fatal to any finding that Jones had a reasonable suspicion to justify the stop. The Government's objection to the finding that Officer Jones had reasonable suspicion to stop Townsel's car for a seatbelt violation is OVERRULED.

### B. Inventory Search

The Government objects to the finding that the MPD officers did not conduct a lawful inventory of Townsel's car. (Gov't Objs. 6-8.)

An inventory search of a vehicle conducted without a warrant does not violate the Fourth Amendment. Colorado v. Bertine, 479 U.S. 367, 371–74 (1987); United States v. Hockenberry, 730 F.3d 645, 658 (6th Cir. 2013) (quoting Bertine, 479 U.S. at 371). Warrantless inventory searches may be conducted when police lawfully take custody of a vehicle. United States v. Smith, 510 F.3d 641, 651 (6th Cir. 2007). An inventory search of a vehicle must be conducted "according to standard police procedures" and may not be undertaken "for purposes of investigation." United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998); see also United States v. Tackett, 486 F.3d 230, 232 (6th Cir. 2007). "In conducting an inventory search, officers do not enjoy their accustomed discretion; they simply follow the applicable policy." Tackett, 486 F.3d at 232

13

(citing Florida v. Wells, 495 U.S. 1, 4 (1990) (stating that police must follow an established routine and not engage in "rummaging")). It is the Government's burden to show by a preponderance of the evidence that the inventory exception applies. See, e.g., Torbert, 2016 WL 4920741, at *7; United States v. Richards, 147 F. Supp. 2d 786, 789 (E.D. Mich. 2001).

Based on a de novo review of the suppression-hearing transcript and exhibits, the Court cannot conclude that the Magistrate Judge's inventory-exception finding was in error.

First, the Government has not shown by a preponderance of the evidence that the Officers were following "standard police procedures" and/or an "applicable policy." Brown testified to the MPD's tow-in policy on re-cross-examination. He confirmed that, under section 3C of the policy, "[w]hen an officer arrests a defendant and the defendant's vehicle is not needed as evidence, the officer is required to allow the defendant to leave the vehicle at the scene of arrest if the defendant so desires and it is legally parked." (Hr'g Tr. 100.) Under Section 8 of the policy, "[i]f a vehicle is left on the street, no inventory should be undertaken." (Id.) The Government does not contend that the MPD needed Townsel's car as evidence. Therefore, MPD policy permitted an inventory of Townsel's vehicle only if it was illegally parked at the traffic stop.

14

The only justification for the claim that Townsel's car was illegally parked is Brown's testimony (on re-re-direct examination) that Townsel's vehicle was parked more than 12 inches from the curb. (Id. at 101.) As the Report notes, however, the Affidavit of Complaint signed by Brown said nothing about Townsel's vehicle being illegally parked. Brown attested that the vehicle was searched "incident to arrest," not "incident to tow." (Report 20-21 (citing Hr'g Tr. Ex. 9).) The Magistrate Judge did not credit Brown's testimony that Townsel's vehicle was illegally parked. Following its own review, the Court finds no reason to question the Magistrate Judge's assessment.

Second, the Government has not shown by a preponderance of the evidence that the officers' purpose in searching Townsel's car was to make an inventory pursuant to a tow. The Report notes numerous inconsistencies that suggest the purpose of the search was not to make an inventory. The most critical is that Jones testified several times that the decision to tow the vehicle was made ***after*** the officers found the weapon in Townsel's car. (Report 19; see also Hr'g Tr. 24, 67-68, 73.) Given that Jones's own testimony demonstrates that the gun-revealing search occurred before the officers' decision to tow the vehicle, the search was not an inventory search.

The Government's objection to the Magistrate Judge's inventory-exception finding is OVERRULED. The MPD's search of Townsel's vehicle was not an inventory search consistent with the Fourth Amendment.

### C. Automobile Exception

The Government objects to the finding that the MPD officers "did not have probable cause to search Townsel's car under the automobile exception." (Gov't Objs. 8.) Under the automobile exception, officers may perform a warrantless search of a vehicle "only where they 'have probable cause to believe the vehicle contains contraband or evidence of criminal activity.'" Cain v. City of Detroit, No. 12-15582, 2016 WL 6679831, at *4 (E.D. Mich. Nov. 14, 2016) (quoting United States v. Lyons, 687 F.3d 754, 770 (6th Cir. 2012)). The Sixth Circuit has explained:

> Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. The court's determination of whether probable cause existed at the time of the search is a commonsense, practical question to be judged from the totality-of-the-circumstances. In determining whether there was probable cause, the court does not look to events that occurred after the search or to the subjective intent of the officers; rather, the court looks at the objective facts known to the officers at the time of the search. . . .

Smith, 510 F.3d at 647–48 (quoting cases; internal quotation marks and citations omitted). The Government has the burden of showing, by a preponderance of the evidence, that the automobile exception applies. See, e.g., United States v. Stapleton, No. 12-11-ART-(1), 2013 WL 3935104, at *16 (E.D. Ky. July 30, 2013).

To support its argument that Jones and Brown had probable cause to search Townsel's car under the automobile exception, the Government points to the officers' testimony that, when they approached the car, they "could smell a faint order of marijuana." (Gov't Objs. 8; see also Tr. Hr'g 17, 89.) As the Government correctly observes, and the Report notes, "the odor of marijuana emanating from a vehicle alone can establish probable cause to believe that marijuana is located in the vehicle." (Gov't Objs. 8-9 (citing cases); see also Report 22 (same).)

The Magistrate Judge specifically found the officers' testimony about the odor of marijuana "unreliable." (Report 23.) She based her finding on her prior determinations about the officers' credibility. (Id. at 22-23.) She also based it on the failure of the affidavit of complaint or the arrest ticket to mention marijuana and the absence of marijuana in Townsel's car. (Id. at 23; see also Hr'g Tr. Exs. 9, 10.) The Court's de novo review of the record yields no reason to

17

question the Magistrate Judge's assessment of the credibility of the MPD officers' testimony about the odor of marijuana.

The Government has not shown by a preponderance of the evidence that the MPD officers had probable cause to believe Townsel's car contained contraband or evidence of criminal activity. The automobile exception does not apply to the MPD's search of Townsel's car. The Government's objection to the Magistrate Judge's automobile-exception finding is OVERRULED.

### D. Inevitable Discovery

The Government argues that, "[e]ven if this Court finds that the automobile exception does not apply, since the inventory of Townsel's car was lawful, the Government submits that the officers would have inevitably discovered the Glock 10mm after Townsel's car had been towed and inventoried." (Gov't Objs. 9.)

The Government did not raise this argument in its response to Townsel's Motion to Suppress. (See generally Resp. to Motion to Suppress.) "Although, the Sixth Circuit 'has not squarely addressed whether a party may raise new arguments before a district judge that were not presented to the magistrate,' it has indicated in several cases that 'a party's failure to raise an argument before the magistrate judge constitutes a waiver.'" United States v. Square, 790 F. Supp. 2d 626, 632-33 (N.D. Ohio 2011) (quoting United States v. Ault, No. 1:10cr20, 2011 WL

18

539710, at *2 (E.D. Tenn. Feb. 4, 2011). "Absent an indication of 'any special circumstances . . . that would make reconsidering this general rule appropriate,' a Court need not consider an argument that [a party] failed to present to the magistrate judge." Id. at 633 (quoting Ault, 2011 WL 539710, at *2 (ellipses in Square)). The Governments points to no such special circumstances here. (See Gov't Objs. 9.) The Court need not consider this argument.

Even if the Court were to consider the Government's inevitable-discovery argument, the Court would reject it. The premise of the argument is wrong. As discussed above, the search of Townsel's car was not a lawful inventory.

**IV. CONCLUSION**

For the reasons stated above, the Government's Objections to the Magistrate Judge's Report are OVERRULED. The Report is ADOPTED, and Townsel's Motion to Suppress is GRANTED.

So ordered this 6th day of December, 2016.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

19